IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BETTY SUE LOWTHER,**

    **Plaintiff,**

                              Civil Action 2:15-cv-3010
vs.                              Judge James L. Graham
                              Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Betty Sue Lowther, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    FACTUAL AND MEDICAL BACKGROUND**

Plaintiff filed her applications for benefits on December 22, 2011, alleging that she has been disabled since September 1, 2010, due to osteoporosis, arthritis, COPD, and asthma. (Tr. 246-50, 251-59, 315, PAGEID #290-94, 295-303, 360). Plaintiff additionally claimed disability due to anxiety, depression and a history of special education. (Tr. 76, 103, PAGEID #117, 147). After initial administrative denials of Plaintiff's claims, an Administrative Law Judge ("ALJ") held a video hearing on September 20, 2013, with a supplemental hearing on March 26, 2014. On June 25, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the

meaning of the Social Security Act.  (Tr. 11-29, PAGEID #52-66).  On September 30, 2015, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (Tr. 1-6, PAGEID #42-47).

Plaintiff filed this case on November 18, 2015, and the Commissioner filed the administrative record on January 22, 2016.  (Doc. 9).  Plaintiff filed a Statement of Specific Errors on March 14, 2016 (Doc. 11), the Commissioner responded on June 21, 2016 (Doc. 15), and Plaintiff replied on July 25, 2016.  (Doc. 17).

### A. Personal Background

Plaintiff was born in 1969 and was 41 years old on the alleged onset date of disability. (Tr. 23, PAGEID #64).  She has a high school education attending special education classes. (*Id.*, Tr. 43-44, PAGEID # 84-85).  Her prior work experience included work as a cook, a cashier, a baker, a delivery driver, a personal care aide, and a cleaner.  (Tr. 23, 37-43, PAGEID #64, 78-84).

### B. Testimony at the Administrative Hearing

After discussing her work history, Plaintiff testified that she had last worked caring for autistic children.  (Tr. 37, 70, PAGEID #78, 111).  She stated that she has a hard time reading, and sometimes has difficulty writing and understanding things.  (Tr. 44, PAGEID #85).  She said she did not understand her children's homework.  (*Id.*).  The ALJ clarified if Plaintiff was illiterate, but Plaintiff responded that she could read words such as "milk," "eggs," and "bread," but she could not read "big words."  (Tr. 44-45, PAGEID #85-86).  She stated that she could not do math beyond division.  (Tr. 45, PAGEID #86).

Plaintiff was next asked how her depression affects her and she responded that she gets upset easily and angry if things did not go right for her.  (Tr. 45, PAGEID #86).  She stated that

she had problems with this when she was working and her manager would let her take a walk when she was upset. (*Id.*). She testified that her anger problem had worsened. (Tr. 45-46, PAGEID # 86-87). Plaintiff also acknowledged feeling overwhelmed a lot. (Tr. 46, PAGEID #87).

Plaintiff testified that she did some household chores, but she could not finish washing dishes and required breaks between chores. (Tr. 52, PAGEID #93). She stated that her husband usually does the laundry and that when she goes grocery shopping, she rides in the cart. (*Id.*). She testifed that she drives, but not much, estimating she drives a short distance about twice a day. (Tr. 53, PAGEID #94).

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the vocational expert ("VE"). (Tr. 55-57, PAGEID #96-98). Based on a hypothetical person of similar age, education, work experience and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could not perform her past jobs, but could perform jobs in the national economy such as a merchandise marker, a hand packer, or a food sorter. (Tr. 56, PAGEID #97).

### C. Relevant Medical Evidence

Although the record contains a history of treatment for numerous issues, Plaintiff's arguments on appeal relate only to her psychological condition. (*See* Doc. 11 at PAGEID #1831-34.) Accordingly, the Court has limited its discussion of the record to the evidence related to Plaintiff's claimed mental impairments.

#### 1. Wes Crum, Ph.D.

Dr. Crum evaluated Plaintiff on March 21, 2012, for disability purposes. (Tr. 579-86, PAGEID #625-33). When asked about her chief complaint, Plaintiff responded, "I have

rheumatoid arthritis and osteoporosis throughout my body." She stated, "I hurt in my back, and I have a hard time getting up."  When asked if anything further is limiting her ability to work she added, "I have a medical excuse from my surgeon that says I am not allowed to sit or stand for long periods of time."  After giving her employer this medical note, she had not been scheduled to return to work.  She was also struggling to find other employment due to her physical limitations.  She stated, "I was also in LD classes all my life, and I don't have the education to have a job where I can s[i]t down."  (Tr. 579-80, PAGEID #625-26).

On mental status examination, Dr. Crum reported that Plaintiff drove to the appointment and arrived on time.  She attended the appointment alone.  Dr. Crum further found Plaintiff was appropriately groomed and dressed, was cooperative, and made good eye contact.  Rapport was easily established, and Plaintiff related in a friendly manner.  Plaintiff initially seemed anxious, but opened up as the interview progressed, and her speech was relevant.

Plaintiff's mood, however, was described as angry, with a flat affect.  Plaintiff reported feeling embarrassed and guilty stemming from her children's past sexual assaults.  Dr. Crum noted that Plaintiff's thought processes were "circumstantial" and she was "redirected to task on several occasions."  (Tr. 583, PAGEID #629).  Dr. Crum stated that Plaintiff appeared to have an inadequate fund of knowledge and a limited vocabulary and noted that throughout the interview "questions were repeated in a more concrete fashion for [Plaintiff] to understand."  (*Id.*).  Dr. Crum estimated her intellectual functioning to be at least in the borderline range.  (*Id.*).  Dr. Crum noted significant impairment of Plaintiff's delayed recall and in her abilities of concentration, persistence, and pace.  (Tr. 584, PAGEID #630).

Dr. Crum diagnosed Plaintiff with major depressive disorder, recurrent, moderate; and assigned her a Global Assessment of Functioning (GAF) score of 60.  (*Id.*).  In addition, Dr.

4

Crum opined that Plaintiff would have significant difficulty understanding and retaining simple instructions and noted due to her distractibility, she had a low level of concentration. (Tr. 585, PAGED# 631). He stated that it appeared that she would be unable to complete work tasks in a timely manner compared to same-age peers and noted that she could not complete serial threes or sevens. (*Id.*). Dr. Crum also opined that over an extended period of time her faculties might deteriorate and slow her performance in completing simple repetitive tasks. (Tr. 586, PAGEID # 632). It was Dr. Crum's opinion that Plaintiff would likely significantly struggle with understanding supervisors' requests given her estimated cognitive ability. (*Id.*).

### 2. Ohio Bureau of Vocational Services

Plaintiff was referred by the Ohio Bureau of Vocational Rehabilitation Services after attending the Washington County Career Center to further her education. She learned after taking the COMPASS Tests that she is not a candidate for higher education. Then she went to ABLE in order to increase her reading skill. There, she learned that the level of educational expectations were beyond her capability. Next, she went to Pathways through Bureau of Vocational Rehabilitation, who referred her to Debra Kuck, M.S., a Psychology Assistant and Gail Rymer, Ph.D., Psychologist for a psychological evaluation which occurred on October 23, 2012. (Tr. 1438, PAGEID #1487).

Plaintiff reported that she was in special education for the majority of her educational career. She indicated she received learning disability services and was placed on an IEP (Individualized Education Plan).

During this evaluation, Plaintiff underwent various testing. On the CES-D, Plaintiff earned a score of 27 which fell in the range of moderate depression. On the WAIS-IV, her Full Scale IQ score of 69 was in the Extremely Low range. Her relative weakness was Verbal

Comprehension. Ms. Buck and Dr. Rymer felt her verbal weakness would negatively impact her ability to work in employment that required asking or answering questions or encoding new information and recalling that information. Based on Plaintiff's performance on the Woodcock Johnson III, she performed academically in the illiterate range. This would significantly impact her ability to participate in any higher education classes where she would need not only accommodations but significant modifications. Ms. Buck and Dr. Rymer opined Plaintiff would likely benefit from training that was repetitious. They also noted that Plaintiff had worked with people through much of her employment. Since she needs to be off her feet for a great deal of time, she might work well in a job where she is able to interact with people, make conversation and give simple assistance. (Tr. 1431-40, PAGEID #1480-89).

   **3. Marvin Wayne Kennedy, Psy. D.**

Plaintiff was evaluated for disability again on October 21, 2013, by Dr. Kennedy. (Tr. 1464-71, PAGEID #1512-20). Plaintiff reported her history of learning disabilities with difficulty understanding concepts and becoming overwhelmed with too much stress. Dr. Kennedy noted that despite taking an antidepressant, Plaintiff reported symptoms of depression and anxiety including difficulty with sleep and excessive worry. (Tr. 1466, PAGEID #1515).

On mental status examination, Dr. Kennedy reported Plaintiff's mood was dysphoric, with normal and congruent affect; attention was variable. Plaintiff's remote memory was limited; and there were deficits in immediate memory. Dr. Kennedy noted that Plaintiff was "easily moved to tears" during the evaluation and that she appeared to be "experiencing anxiety" "as evidenced by pressured speech, loose associations, and some variable attention that appeared related to anxiety" and "cognitive deficits." (Tr. 1467, PAGEID #1516).

I.Q. testing was performed in which Plaintiff obtained a valid full scale IQ score of 72.

(Tr. 1468-69, PAGEID #1517-18). WRAT scores resulted in Plaintiff's word reading being at a 3.9 grade level (second percentile rank); her sentence comprehension was at a 3.9 grade level (first percentile rank); her spelling grade equivalent was 5.1 (fifth percentile); and her math computation grade equivalent was 4.6 (fourth percentile). (Tr. 1469, PAGEID #1518).

Dr. Kennedy diagnosed major depressive disorder, recurrent, moderate; generalized anxiety disorder; and borderline intellectual functioning. He assigned Plaintiff a GAF score of 60. (*Id.*). Dr. Kennedy opined that Plaintiff would have moderate deficits in the area of understanding, remembering, and carrying out instructions, noting that Plaintiff had significant difficulties in understanding written information, deficits in spelling, and deficits in her ability to recall immediate information. (Tr. 1470, PAGEID #1519). Plaintiff is likely to have moderate to significant difficulties in performing multi-step tasks due to her inability to retain information in her short-term memory. (*Id.*). Dr. Kennedy also opined that Plaintiff would have mild to moderate difficulties in responding appropriately to supervisors and coworkers in a work setting. (Tr. 1471, PAGEID #1520). Finally, Dr. Kennedy determined that Plaintiff will have moderate to severe deficits in her ability to respond to work pressure in a work setting. (*Id.*).

On November 25, 2013, Dr. Kennedy completed a medical source statement of Plaintiff's ability to do mental work activities in which he concluded that Plaintiff was mildly impaired in her abilities to understand, remember and carry out and simple instructions, and make judgments on simple work-related decisions; moderately limited in her ability to understand, remember and carry out and complex instructions; but markedly limited in her ability to make judgments on complex work-related decisions. (Tr. 1472-74, PAGEID #1521-23).

7

    4.  **State Agency Evaluation**

On April 16, 2012, Tonnie Hoyle, Psy.D., a state agency psychologist, assessed Plaintiff's mental condition and opined that Plaintiff had moderate restrictions in her activities of daily living; mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace; with no episodes of decompensation of an extended duration. (Tr. 79, PAGEID #121). Dr. Hoyle gave great weight to Dr. Crum's opinion finding it consistent with the evidence in file. (Tr. 80, PAGEID #122). Dr. Hoyle concluded that Plaintiff could perform simple, repetitive tasks in a static work environment, with limited fast paced production standards. (Tr. 82-83, PAGEID #124-25).

On June 20, 2012, after review of Plaintiff's medical record upon reconsideration, Kristin Haskins, Psy.D., a state agency psychologist, assessed Plaintiff's mental condition and opined that Plaintiff had moderate restrictions in her activities of daily living; moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; with no episodes of decompensation of an extended duration. (Tr. 106, PAGEID #148). She also gave great weight to Dr. Crum's assessment. (Tr. 107, PAGEID #149). Dr. Haskins opined that Plaintiff could perform simple, routine tasks in a stable, static work environment with limited fast paced production standards and no need for close sustained focus/attention. (Tr. 110-11, PAGEID #152-53).

  **D. The Administrative Decision**

On June 25, 2014, the ALJ issued an unfavorable decision. (Tr. 11-25, PAGEID #52-66). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 1, 2010. (Tr. 13, PAGEID #54). The ALJ determined that Plaintiff had

the following severe impairments: obesity, degenerative disc disease, residuals of left and right ankle surgery, chronic obstructive pulmonary disease (COPD), affective disorders, anxiety disorder, and organic brain disorder. (Tr. 14, PAGEID #55). The ALJ found that she did not, however, meet the requirements of an impairment listed in 20 CFR Subpart P, Appendix 1. (Tr. 14-16, PAGEID #55-57). The ALJ ultimately found that Plaintiff had the RFC to perform limited light work. Mentally, the Plaintiff is able to understand, remember, and carry out simple tasks and to respond appropriately to occasional interactions with coworkers and supervisors; she can tolerate no interaction with the general public. She should not engage in employment requiring fast-paced production requirements and should be required to make few, if any, work-related decisions as well as few, if any, changes in the work routine. (Tr. 17, PAGEID #58). Relying on the VE's testimony, the ALJ concluded that even though Plaintiff cannot perform her past relevant work, she can perform jobs that exist in significant numbers in the national economy. (Tr. 23-24, PAGEID #64-65). The ALJ thus concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 25, PAGEID #66).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The

Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. Nat'l Labor Relations Bd.*, 296 F.3d 384, 395 (6th Cir. 2002).

### III. DISCUSSION

On appeal, Plaintiff alleges that the ALJ's consideration of the opinion evidence is flawed and not supported by substantial evidence. In particular, Plaintiff asserts that the ALJ did not adhere to the requirements of SSR 96-8p, which requires an RFC assessment to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.* laboratory findings) and nonmedical evidence (*e.g.* daily activities, observations)." Plaintiff additionally asserts that in fashioning Plaintiff's RFC, the ALJ inappropriately discounted the opinion of two consulting examiners, Dr. Crum and Dr. Kennedy, and afforded too much weight to the opinions of non-examining state agency reviewer, Dr. Haskins. Having carefully reviewed the administrative record and the parties' briefs, and also having carefully considered the ALJ's analysis, the undersigned finds that the ALJ's decision is supported by substantial evidence.

### A. Social Security Ruling 96-8p

During the sequential analysis, the ALJ determined Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1520(a)(4), 404.1545, 416.920(a)(4), 416.945[1]. RFC is a measure of what an individual can do despite the limitations imposed by her impairments. 20 C.F.R. § 404.1545. Here, the

---

[1] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

ALJ found Plaintiff could perform a range of work that accommodated a variety of mental limits. (Tr. 17, PAGEID #58). According to the ALJ's assessment, Plaintiff is able to understand, remember, and carry out simple tasks and able to respond appropriately to occasional interactions with coworkers and supervisors; she cannot, however tolerate interactions with the general public. In addition, according to the ALJ's RFC, Plaintiff should not engage in employment involving fast-paced production requirements, should not be required to make more than a few, if any, work-related decisions, and can tolerate only a few, if any, changes in work routine. (*Id.*).

The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See e.g.,* 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner."). Moreover, the Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. § 423(d)(5)(B), 1382c(a)(3)(H)(i)(incorporating § 423(d) for Title XVI); 20 C.F.R. § 404.1545(a) (holding that "the ALJ . . . is responsible for assessing your residual functional capacity"). As the court recognized in *Henderson v. Comm'r of Soc. Sec.,* 2010 WL 750222, No. 1:08-cv-2080 (N.D. Ohio March 2, 2010), pursuant to the regulations, the ALJ is charged with evaluating several factors in determining the residual functional capacity, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony. *Id.* at *2 (citing *Webb v. Comm'r of Soc. Sec.,* 368 F.3d 629, 633 (6th Cir. 2004); Social Security Ruling 96-5p; Social Security Ruling 96-8p).

Plaintiff's assertion that the ALJ failed to comply with Social Security Ruling 96-8p is unavailing.  Ruling 96-8p requires that the ALJ's RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)."  Here, the ALJ reasonably relied on all the evidence in the record to determine that Plaintiff's mental impairment limited her ability to do basic work activities.  The ALJ accommodated those limitations in her RFC determination and provided sufficient analysis regarding those limitations. (*See generally* Tr. 17-23, PAGEID #58-64).

Further, 20 C.F.R. § 404.1527(d)(2) explains that "[a]lthough we consider opinions from medical sources on issues such as your residual functional capacity, . . . the final responsibility for deciding these issues is reserved to the Commissioner."  The regulations do not require an ALJ to rely solely upon medical opinions when formulating a residual functional capacity, but instead explicitly require an ALJ to evaluate medical opinions based on their consistency with and support from "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2), (3), (4).  Indeed, as the Sixth Circuit has held, physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 287 (6th Cir. 1994).

The ALJ here gave great weight to medical opinion evidence from Dr. Haskins and some weight to the assessment of Dr. Hoyle, state agency reviewing psychologists, who completed mental residual functional capacity assessments in April and June 2012.  (Tr. 79-83, 106-11, PAGEID #121-25, 148-53).  The ALJ accepted Dr. Haskins' opinion that Plaintiff can perform simple, routine tasks in a stable, static work environment with limited fast-paced production

standards and no need for close sustained focus/attention. (Tr. 17, 22, PAGEID #58, 63 (citing Tr. 110-11, PAGEID #152-53)). The ALJ further noted that Dr. Haskins found that Plaintiff was only partially credible. (*Id.*). The ALJ accounted for Dr. Haskins' opinion with her general restriction that Plaintiff "is able to understand, remember, and carry out simple tasks and to respond appropriately to occasional interactions with coworkers and supervisors; she can tolerate no interaction with the general public. She should not engage in employment requiring fast-paced production requirements and should be required to make few, if any, work-related decisions as well as few, if any, changes in the work routine." (Tr. 17, PAGEID #58). The Social Security regulations and rulings expressly recognize that state agency psychologists are "highly qualified psychologists who are also experts in Social Security disability evaluation." *See* 20 C.F.R. § 404.1527(e)(2)(i); Social Security Ruling 96-6p; *see Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 651 (6th Cir. 2006) (en banc) (affirming ALJ's decision adopting reviewing physician's opinion over treating physician's opinion). As such, the ALJ's reliance on these opinions was appropriate.

The ALJ also considered Plaintiff's subjective complaints in evaluating her RFC but found they were not entirely credible. (Tr. 18, PAGEID #59). The Sixth Circuit has held that the Court must accord great deference to an ALJ's credibility assessment, particularly because the ALJ has the opportunity to observe the demeanor of a witness while testifying. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003). It is not the province of the reviewing court to "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir. 1997). The ALJ expressly stated that she had considered Plaintiff's subjective complaints in accordance with the

requirements of Social Security Ruling 96-4p, 96-7p, and 20 C.F.R. § 404.1529 (Tr. 17, PAGEID 58), and set forth the various factors that she considered in her credibility assessment, including specific citations to medical records and medical source opinions, objective clinical findings, treatment regimen, medication use, and, observations at the hearing and activities. (Tr. 17-23, PAGEID #58-64). In sum, the ALJ complied with the regulations.

### B. Consideration of Expert Opinions

Plaintiff also contends that the ALJ erred by inappropriately discounting the opinion of two consulting examiners, Dr. Crum and Dr. Kennedy. (Doc. 11 at PAGEID #1831-34). In order to determine whether the ALJ acted properly in disagreeing with a medical source, the Court must first determine the medical source's classification. Of the three types of medical sources—nonexamining sources, nontreating (but examining) sources, and treating sources—Dr. Crum and Dr. Kennedy were the second. *See* 20 C.F.R. § 404.1502; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) ("A 'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' [her]."). In contrast, Dr. Haskins was a "nonexamining source." *See Smith*, 482 F.3d at 875 ("A 'nonexamining source' is 'a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case.'").

The Social Security Administration gives the most weight to opinions from a claimant's treating source; accordingly, an ALJ is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." (*Id.*). However, this requirement applies only to treating sources. *Smith,* 482 F.3d at 876. With

regard to nontreating, but examining, sources, the agency will simply "[g]enerally [ ] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" her. 20 C.F.R. § 404.1527(c)(1); *see also Smith*, 482 F.3d at 875. Because Dr. Crum and Dr. Kennedy should not have been afforded controlling weight, in order to determine how much weight to give Dr. Crum's and Dr. Kennedy's opinions, the Regulations require ALJs to weigh their opinions with the factors—supportability, consistency, specialization, etc.—described in 20 C.F.R. §404.1527(c).

  The ALJ discussed Dr. Crum's and Dr. Kennedy's opinions along with the assessment from Ms. Buck and Dr. Rymer (Tr. 21, PAGEID #62) and gave "some" weight to both Dr. Crum's and Dr. Kennedy's opinions to the extent they were consistent with the RFC finding. (Tr. 22-23, PAGEID #63-64). The ALJ cited the absence in the record of other evidence that Plaintiff lacked the mental ability to perform *any* work activity. The ALJ noted that Plaintiff received the majority of her mental health treatment from primary care physicians, and she sought specialized mental health treatment only for a short period of time when dealing with personal stressors. (Tr. 23, PAGEID #64). The record shows that the ALJ considered relevant factors in its determination to credit Dr. Haskins' assessment over Dr. Crum and Dr. Kennedy. The ALJ agreed with Dr. Haskins who found Plaintiff had moderate restriction of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 22, PAGEID #63, citing to Tr. 106, PAGEID #148). Dr. Haskins also gave weight to Dr. Crums' opinions, which she incorporated into her assessment. (Tr. 107, PAGEID #149).

The record indicates that Plaintiff had no treating psychologist or psychiatrist and instead obtained her medication from her primary care physician, Bob Erdelyi, M.D.  (*See, e.g.*, 599-600, 605, PAGEID #645-46, 651).  Because there was no medical source with a longitudinal picture of Plaintiff's mental health, each psychological medical source opinion necessarily was based on a limited amount of evidence.  Considering all of this, the ALJ's decision to place more weight on the conclusions of Dr. Haskins than those of Dr. Crum and Dr. Kennedy was within the permissible "zone of choice" afforded to an ALJ.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  Accordingly, the undersigned finds that the mental RFC as determined by the ALJ is supported by substantial evidence.

## IV.    RECOMMENDED DISPOSITION

For the reasons stated, it is **RECOMMENDED** that the Plaintiff's statement of errors be **OVERRULED** and that judgment be entered in favor of Defendant.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**


Date:  December 7, 2016 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE